IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONNA A. DIAZ LONG, | ) | Case No. 3:16-cv-03089-TMP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |

I.      **Introduction**

Plaintiff, Donna A. Diaz Long ("Long"), seeks judicial review of the final administrative decision of the Commissioner of Social Security partially denying her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") for the period from October 24, 2011 through August 8, 2013 under Titles II and XVI of the Social Security Act.  The parties have consented to my jurisdiction.  *See* ECF Doc. 16.  Because the commissioner's decision is supported by substantial evidence, the final decision of the commissioner must be AFFIRMED.

II.      **Procedural History**

Long applied for disability benefits on October 24, 2011 (Tr. 171, 313) and SSI benefits on April 18, 2012 (Tr. 318).  Long alleged disability based on systemic lupus erythematosus, fibromyalgia, arthritis, and panic and depressive disorders (20 C.F.R. §§ 404.1520(c) and 416.920(c)).  (Tr. 15)  Long's applications were denied initially on June 14, 2012.  (Tr. 171)

Long requested a hearing on June 20, 2012. (Tr. 171) Administrative Law Judge ("ALJ") Brian W. Lemoine heard the matter on June 14, 2013, and rendered an unfavorable decision on September 11, 2013. (Tr. 167) Long filed a timely request for review of the hearing decision on October 16, 2013. (Tr. 253) The Appeals Council remanded the case to the ALJ on March 26, 2015. (Tr. 181) ALJ Renita F. Barnett-Jefferson heard the matter after remand on August 19, 2015. (Tr. 33) ALJ Barnett-Jefferson found Long was not disabled prior to August 9, 2013, but became disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act on her 55th birthday on August 9, 2013. (Tr. 23)

## III. Evidence

Long now raises three arguments: (1) the ALJ erred in weighing the opinion of treating physician John D. Morgan, Jr., M.D.; (2) the ALJ erred by not assessing Long's capacities for sitting, standing, walking, and lifting on a function-by-function basis; and (3) the ALJ erred by only including the limitation in the residual functional capacity ("RFC") that Long "would need the use of a cane for walking to and from the worksite" (Tr. 16-17). *See* ECF. Doc. 14, Page ID# 877. Because the issues Long has raised are limited, it is not necessary to summarize the entire record.

### A. Relevant Personal, Educational, and Vocational Evidence

Long was 57 years old on the date of the most recent hearing. (Tr. 36) Long completed high school and took online college courses, but did not complete a degree. (Tr. 18, 357) Her past work experience included work as a magazine customer service representative, secretary, and telemarketer. (Tr. 357-358, 364)

### B. Medical Evidence

On April 22, 2010, Long had her initial visit with C.P. Solomon, MD regarding her widespread arthralgia, ASCVD with a history of stroke, TIA, stress, epigastric pain with ulcers,

and fibrocystic breast disease.  (Tr. 493)  Dr. Solomon noted Long's muscle strength and tone and her gait were normal.  (Id.)  Dr. Solomon wrote an undated letter in which he stated he has been treating Long for systemic lupus "erythematosis."  (Tr. 492)

On June 30, 2010, Keith W. Weaver, M.D. evaluated Long.  (Tr. 481)  Long reported "trouble" with her shoulder and elbow that extended into her hand.  (Id.)  Dr. Weaver found Long had full motion of her neck, including flexion, extension, rotation, and lateral bends.  (Id.) Dr. Weaver found that any motion about her right shoulder was painful.  (Id.)  Dr. Weaver found she had good power on abduction and external rotation on the left.  (Id.)  Dr. Waver found Long was able to stand on her heels and toes and could squat and arise fairly well.  (Id.)  X-rays of Long's neck showed a degenerative cervical disk, without posterior spurring, at C5-6 and x-rays of her right shoulder showed no obvious fractures, dislocations, or other pathology.  (Id.)  Dr. Weaver diagnosed subacromial bursitis, right tennis elbow, and probable other tendinopathies. (Id.)  Dr. Weaver injected Long's subacromial bursa with Lidocaine and Celestone.  (Id.)

On July 14, 2010, Dr. Weaver evaluated Long regarding her complaints of neck, right shoulder, left shoulder, and right elbow pain.  (Tr. 479)  Dr. Weaver noted Long had fairly good motion in her right shoulder, negative impingement, and tenderness of her proximal extensor origin.  (Id.)  Dr. Weaver injected Long's proximal extensor origin in her right elbow with Lidocaine and Celestone.  (Id.)

On October 14, 2010, Dr. Solomon evaluated Long regarding her chronic pain.  (Tr. 490) Dr. Solomon noted Long had bilateral pain at her pressure points and he believed Long had fibromyalgia.  (Id.)  Dr. Solomon prescribed Long Trazodone and Lyrica, and continued her treatment with Protonix and Plavix.  (Id.)  Dr. Solomon noted Long's muscle strength and tone were normal and her gait was without abnormality.  (Id.)

On February 21, 2011, Dr. Weaver evaluated Long's condition. (Tr. 477) Long complained of multiple joints, including her shoulders, elbows, neck, back, and right hip. (Id.) She reported pain in her right hip that radiated into her leg and calf that had started four or five weeks prior to her appointment. (Id.) Dr. Weaver noted Long was able to walk with a mild limp and squat "fair, but not fully." (Id.) Long's straight leg raising was negative while seated and Dr. Weaver found tenderness over Long's right and some on her left greater trochanter. (Id.) X-rays of Long's pelvis and hips showed well-maintained joint space. (Id.)

On April 15, 2011, Dr. Solomon evaluated Long for a follow-up regarding her chronic problems including fibromyalgia, arthritis, stress, fibrocystic breast disease, and epigastric pain. (Tr. 488) Dr. Solomon noted that Long's muscle strength and tone were normal and her gait was without abnormality. (Id.)

On June 2, 2011, x-rays of Long's right hip showed that her hip was located normally, there was no evidence of fracture or dislocation, and the interpreting physician found no acute right hip abnormality. (Tr. 523) X-rays of Long's femur taken the same day showed her osseous alignment was normal with no fracture, dislocation, or acute abnormality. (Tr. 524)

On October 28, 2011, an emergency physician at the Princeton Baptist Medical Center evaluated Long for pain in her right shoulder, hip, and leg. (Tr. 512) Long reported chronic pain in her leg, calf, neck, and back. (Id.) Long also reported that her pain medications had been stolen. (Tr. 512, 515)

### C.    Opinion Evidence

#### 1.    Karl Kirkland, Ph.D. – Consultative Psychological Examiner

Karl Kirkland, Ph.D. performed a psychological evaluation of Long on May 18, 2012. (Tr. 539) Although it is not necessary to discuss Dr. Kirkland's opinions concerning Long's psychological condition in order to address the issues Long has raised in this appeal, it is

important to note that Long told Dr. Kirkland that she had walked approximately half a mile from the bus stop to Kirkland's office for her appointment.  (Id.)

## 2.    Ilene Stone, M.D. – Consultative Examiner

On April 29, 2013, Ilene Stone, M.D. performed an internal medicine examination of Long.  (Tr. 549)  Long complained of generalized pain located in her shoulders, arms, hands, hips, thighs, buttocks, legs, and calves that began in February of 2010.  (Id.)  She reported she was diagnosed with systemic lupus erythematosus and fibromyalgia in August of 2010.  (Id.)  Long reported her pain intensity was seven out of ten at best and ten out of ten at worst.  (Id.)  Long reported she had taken Lyrica, Lortab, Plaquenil, and prednisone but had stopped taking her medications and experienced a marked increase in her pain and decrease in her ability to do self-care.  (Id.)  Long stated her pain increased with reaching, making sudden movements, standing for more than twenty minutes, sitting, lying in one position, bending, lifting, cold weather, walking, and wearing clothing.  (Id.)

Long reported she did not do cooking, cleaning, laundry, or shopping due to problems standing and pain in her hands, arms, and legs.  (Tr. 550)  Long stated she showered every other day and dressed herself with help.  (Id.)  Long stated she watched television and read.  (Id.)

Dr. Stone noted Long's stance was normal and her gait was antalgic and favored her right lower extremity.  (Tr. 551)  Dr. Stone found Long could not walk on heels and toes or squat.  (Id.)  Dr. Stone noted Long used a cane for pain outdoors that had been prescribed by a doctor and was medically necessary.  (Id.)  Dr. Stone noted Long was able to change her clothes for the exam, get on and off the exam table, and rise from a chair without difficulty.  (Id.)

Dr. Stone found Long exhibited negative straight leg raise in the seated position, but positive in the supine position.  (Tr. 552)  Long had full range of motion in her elbows, forearms, wrists, hips, knees, and ankles, but limited range of motion in her shoulders.  (Id.)  Long's joints

were stable, but Dr. Stone noted tenderness in Long's feet, knees, thoracic and lower lumbosacral spine and paraspinals, supraspinatus muscles, scapula, shoulders, elbows, lateral aspects of the hips, SI joints, sciatic notches, and hands. (Id.) Dr. Stone did not find any subluxations, contractures, ankyloses, thickening, redness, heat, swelling, or effusion. (Id.) Dr. Stone found Long had full range of motion in both hands, but her grip strength was limited by pain. (Id.) Long was able to zip, button, and tie, but her dexterity was limited due to pain. (Id.)

Dr. Stone diagnosed Long with systemic lupus erythematosus, fibromyalgia, hypertension, and a history of palpitations, seizures, depression, cerebrovascular accident, multiple transient ischemic attacks, and asthma. (Id.) Long indicated she had not been taking the medications prescribed to treat her conditions. (Tr. 550)

In her medical source statement regarding Long's physical capacity, Dr. Stone found Long could lift or carry up to 10 lbs. frequently, 11 to 20 lbs. occasionally, and never lift or carry 21 or more lbs. based on the: noted tenderness in Long's knees, shoulders, hips, and other joints; limited range of motion in Long's shoulders; Long's use of a cane for ambulation; and her inability to walk on toes and heels. (Tr. 555) Dr. Stone found Long could sit for two hours, stand for twenty minutes, and walk for thirty minutes without interruption. (Id.) In an eight-hour work day, Dr. Stone found Long could sit, stand, or walk for five hours. (Id.) Dr. Stone found it was medically necessary for Long to use a cane to ambulate, but that Long could use her free hand to carry small objects. (Tr. 555) Dr. Stone noted Long used her cane in the entire examination. (Id.) Dr. Stone found Long could use her hands to handle, finger, and feel frequently, reach and push/pull occasionally, but never to reach overhead based on the limited range of motion in Long's shoulders and decreased grip strength. (Tr. 556) Dr. Stone found Long could only occasionally use her feet to operate foot controls due to the pain and tenderness in her knees. (Id.) Dr. Stone found Long could occasionally climb stairs and ramps, but could

never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. (Tr. 557) Dr. Stone found Long could occasionally tolerate vibrations, but could never tolerate exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes, or pulmonary irritants, or extreme temperatures. (Tr. 558)

In her medical source statement, Dr. Stone opined Long could not shop, use standard public transportation, or walk a block at a reasonable pace on rough or uneven surfaces. (Tr. 559) Dr. Stone opined Long could travel without a companion for assistance, ambulate without using a wheelchair, walker, or two canes or crutches, climb a few steps using a handrail, prepare a simple meal and feed herself, care for her personal hygiene, and sort, handle, or use papers or files. (Id.)

### 3. M. Tosi Gilford, M.D. – State Agency Reviewing Physician

On June 6, 2012, state agency reviewing physician M. Tosi Gilford, M.D. issued an RFC assessment of Long's physical capacity. (Tr. 140-42) Dr. Gilford found Long could lift and/or carry 20 lbs. occasionally and 10 lbs. frequently. (Tr. 140) Dr. Gilford found Long could stand and/or walk or sit with normal breaks for a total of six hours in an eight-hour workday. (Id.) He found Long had unlimited ability to push and/or pull, other than the limitations on her ability to lift and/or carry. (Tr. 141) He found Long could climb ramps or stairs, balance, stoop, kneel, crouch, or crawl occasionally, but could never climb ladders, ropes, or scaffolds. (Id.) Dr. Gilford found Long must: avoid concentrated exposure to cold, heat, wetness, humidity, and vibrations; avoid all exposure to hazards; but could handle unlimited exposure to noise, fumes, odors, dusts, gasses, and poor ventilation. (Id.) Dr. Gilford opined Long must avoid unprotected heights, hazardous machinery, uneven terrain like curbs or uneven pavement, hazardous situations, and wet, slippery, or icy surfaces. (Tr. 142)

#### 4. John Morgan, Jr. M.D. – Treating Rheumatologist

Treating physician John Morgan, Jr. M.D. prepared a voluntary benefits disability claim form for Long on July 19, 2011.  (Tr. 496)  Dr. Morgan noted Long had reported diffuse pain that required ambulation with a crutch.  (Id.)  Dr. Morgan stated that Long's limited range of motion, allodynia, and hyperpathia support his diagnosis.  (Id.)  Dr. Morgan planned to treat Long with rest, exercise, physical therapy, and medications, including Lyrica and Lortab, but the medical record did not specify the type of physical therapy.  (Tr. 497)  Dr. Morgan opined that Long could occasionally sit, but never stand or walk.  (Id.)  He found Long could occasionally perform fine finger movements or hand eye coordinated movements, but could never push or pull.  (Id.)  Dr. Morgan opined that Long could never climb, twist, bend, stoop, reach above shoulder level, or operate heavy machinery.  (Id.)  He found Long could occasionally lift 10 lbs., but could never lift over 10 lbs.  (Id.)  Dr. Morgan opined Long should not do repetitive hand and foot actions, and could never walk, bend, or stoop.  (Tr. 498)  Dr. Morgan opined that he did not support Long's return to work "within the restrictions and limitations [he had] provided" and stated he had not determined when he expected improvement in Long's physical capacity.  (Id.)

#### D. Testimonial Evidence

At her initial June 14, 2013 ALJ hearing, Long testified, in relevant part, as follows: (Tr. 77-129)

- She was 54 at the time of the hearing.  (Tr. 82)

- She obtained a high school diploma, and had undergone clerical, entrepreneur, grant writing, and job related training.  (Tr. 82)

- She became disabled on June 21, 2011, when she could no longer work as a patient care secretary at Baptist Health Center Princeton.  (Tr. 83-85)

- She lived with her sister and niece and stayed in the living room of a two-bedroom apartment.  (Tr. 85)

- She stated her work as a patient care secretary in a surgery unit involved typing, filing, supplies, telephones, charting, liaison work, and included lifting and carrying. (Tr. 86-87)

- She testified she left her last job because she started experiencing pain in her shoulders, hips, arms, hands, fingers, and legs and she had to limit her movement and rely on the support of other staff. (Tr. 89)

- She got her cane in 2011, and she used it to get up from chairs, walk, and balance. (Tr. 89, 99, 101)

- She had used crutches in 2010 due to immobility in her hips that cause her to fall many times. (Tr. 90)

- She went on leave from her job in June of 2011 and was terminated in September 2011, in part because she began to type slower, made errors, had trouble thinking and concentrating, and was sent to the emergency room because she would yell and have spams from her pain. (Tr. 91-93)

- She could not stand for long periods because of pain in her feet, ankles, legs, etc. and her fibromyalgia. (Tr. 102)

- She could stand for ten to fifteen minutes without using her cane. (Tr. 103)

- She found Plaquenil made her sore and sick. (Tr. 103) Prednisone made her nauseated. (Id.) Lortab made her tired. (Tr. 94) Aleve caused an ulcer in her stomach. (Tr. 105). Lyrica worked, but insurance issues prevented her from obtaining the medication. (Tr. 104).

- She cannot type (Tr. 105), lift (Tr. 106), reach overhead (Tr. 107), wash her hair (Tr. 107-08), dress in certain clothing (Tr. 108), or get in and out of the shower without assistance (Tr. 109). She could read and write (Tr. 109), make simple meals (Tr. 110), shop at grocery stores that provided "mobiles" (Tr. 110), and sometimes bathe and wash herself (Tr. 108).

At her August 19, 2015 ALJ hearing, Long testified, in relevant part, as follows: (Tr. 33-70)

- She was 57 years old. (Tr. 36)

- She lived with her friend in her friend's home. (Tr. 37)

- She did not have a vehicle, but would drive once a week when she was in Ohio. (Tr. 45) Her friend brought her to the hearing. (Tr. 46)

- She had a twelfth grade education and started some online courses that she did not complete. (Tr. 46)

- She had not worked since her alleged onset date, June 21, 2011, but in the past she had worked as a secretary, customer service representative, and telemarketer. (Tr. 47)

- The primary symptom that prevented her from working was systemic lupus erythematosus and muscle pain. (Tr. 47) Other medical conditions that contributed to her being unable to work included fibromyalgia, depression, anxiety and arthritis in her hands, neck, and shoulder. (Tr. 48)

- She experienced "flare-ups" that included spasms in her chest wall, arms, shoulders, legs, and right hip that would occur three times a day, leave her incapacitated for over twenty minutes, and cause her to cry out or yell. (Tr. 49-50) On a scale of one to ten, she rated the pain level she experienced during her typical spasms as seven or eight. (Tr. 54) After experiencing a bad spasm, she would be out of work for the following one or two weeks and would feel exhausted for probably three weeks. (Tr. 55)

- She did not bake, cook, or do any household chores. (Tr. 57)

- She had difficulty sitting in a chair. (Tr. 60)

- She could only stand for approximately five minutes, because she would feel "pressure like [she was] going to fall" in her right hip and legs. (Tr. 61)

- She regularly elevates her legs on pillows for most of the day. (Tr. 62-63)

- She was able to go to the restroom, bathe and shower, and eat unassisted. (Tr. 63) She liked to watch television and read stories and the Bible. (Tr. 66)

- She was taking Lyrica, Norco, and Hydrocodone. (Tr. 68)

Vocational Expert ("VE") Dr. Robert Beadles also testified (Tr. 70-75):

- Plaintiff's past work positions were a unit clerk in hospital settings, receptionist, and telemarketer or telephone solicitor. (Tr. 71)

- The ALJ asked the VE to consider a hypothetical individual with the same education and work experience as plaintiff, who was limited to light work with occasionally pushing and pulling of hand controls, occasionally reaching overhead, occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. (Tr. 71) The individual should never climb ladders and scaffolds, work in environments of unprotected heights or around hazards, or moving mechanical parts. (Id.) The individual should not operate a motor vehicle for commercial purposes. (Id.) The individual is limited to occasional exposure to humidity and wetness, extreme cold, and extreme heat. (Id.) There should be no concentrated exposure to uneven terrain or wet, slippery surfaces. (Id.) The individual is limited to simple

tasks with non-confrontational interaction with supervision and occasional interaction with coworkers and the public. (Id.) Changes in the work environment or expectations should be infrequent and gradually introduced. (Id.)

- The VE opined that inability to interact with the general public and co-workers would prevent the hypothetical individual from being able to perform any of Long's past work. (Tr. 72) However, the VE opined there are light jobs that the hypothetical individual would be able to perform, such as labeler or automatic packer jobs. (Id.)

- The VE did not alter his opinion with the addition of the use of a cane for "just ambulating to and from the worksite." (Tr. 73)

- The VE opined that employers would only allow new workers to be absent one or two days per month during a probationary period. (Tr. 73)

- The VE opined that if a person is off task 15-20% of the workday that would preclude competitive work. (Tr. 73) He opined being off task up to 15% of the day would not preclude work. (Id.)

## IV.     Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ..[1]

42 U.S.C. § 423(d)(2)(A).

---

[1] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow the five-step sequential analysis set out in agency regulations, which can be paraphrased as follows:

1. If the claimant is doing substantial gainful activity, she is not disabled.

2. If claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents her from doing past relevant work. If claimant's impairment does not prevent her from doing his past relevant work, she is not disabled.

5. If claimant is unable to perform past relevant work, she is not disabled if, based on her vocational factors and residual functional capacity, she is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. Id.

V.      **ALJ's Findings and Decision**

The ALJ's May 7, 2015 decision contained the following paraphrased findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015. (Tr. 15)

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*). (Tr. 15)

3. Since the alleged onset date of disability, June 21, 2011 the claimant has had severe impairments of: systemic lupus erythematosus, fibromyalgia, arthritis, panic and depressive disorders (20 C.F.R. §§404. 1520(c) and 416.920(c)).

However, small bower obstruction was indicated after August 9, 2013, the date the claimant attached age 55. (Tr. 15)

4. Since the alleged onset date of disability, June 21, 2011 the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 16)

5. After careful consideration of the entire record, the ALJ found that since June 21, 2011 the claimant has the residual function capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following exceptions and considerations: use of a cane to walk to and from the work site; occasionally operate hand controls and reach overhead; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and never climb ladders or scaffolds; occasionally be exposed to humidity and wetness, and extremes of temperature; never be exposed to unprotected heights, moving mechanical parts, or operation of a motor vehicle; no exposure to uneven terrain or wet, slippery surfaces. Additionally, Long is limited to simple tasks; occasional interaction with coworkers and the public; and changes in the work environment or expectations should be infrequent and introduced gradually. The claimant would need the use of a cane for walking to and from the worksite. (Tr. 16-17)

6. Since June 21, 2011 the claimant has been unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965). (Tr. 22)

7. Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On August 9, 2013 the claimant's age category changed to an individual of advanced age (20 C.F.R. §§ 404.1563 and 416.963). (Tr. 22)

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964). (Tr. 22)

9. Prior to August 9, 2013 transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on August 9, 2013 the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). (Tr. 22)

10. Prior to August 9, 2013 the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exited in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a). (Tr. 22)

13

11. Beginning on August 9, 2013 the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966). (Tr. 23)

12. The claimant was not disabled prior to August 9, 2013 but became disabled on that date and has continued to be disabled through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)). (Tr. 23)

Based on these findings, the ALJ determined that Long was not disabled during the period from the June 21, 2011 alleged onset date, to August 9, 2013. (Tr. 13, 23) But the ALJ found Long became disabled on August 9, 2013 on her 55th birthday.. (Tr. 23)

## VI.    Law & Analysis

### A.    Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994)).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762,

772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."); s*ee also Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

The court must also determine whether proper legal standards were applied. If not, reversal is required unless the errors of law were harmless. *See e.g. White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue,* No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 WL 6130824, at *5 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 WL 2929562, at *5 (N.D. Ohio July 9, 2010).

**B.      The ALJ Properly Weighed Dr. Morgan's Opinion**

The ALJ accorded little weight to Dr. Morgan's medical assessment, stating:

John D. Morgan, Jr., M.D., completed a Voluntary Benefits Disability Claim Form on July 11, 2011, for the claimant, in which he related osteoarthritis with myofascial pain and fibromyalgia to be the primary diagnoses preventing the claimant from working, with symptoms of diffuse pain and crutch for ambulation required.  He noted clinical findings of limited range of motion and hypersensitivity and prescribed treatment of medications of Lyrica, and Lortab, rest, exercise, and physical therapy.  He completed a residual functional capacity [analysis] in which he assessed she could occasionally sit and never stand and walk; never push or pull and occasionally perform[] fine finger movement and coordinated hand/eye movements; never climb, twist, reach above shoulder level, or operate heavy machinery; and lift and carry ten pounds occasionally [].  Dr. Morgan's assessment is given little weight.  His restriction to never standing or walking and only occasionally sitting is contrary to his prescribed treatment of exercise and physical therapy, and the evidence of record as a whole.

(Tr. 21, record citation omitted)

Long argues the ALJ failed to provide sufficient bases for according little weight to Dr. Morgan's opinion.  ECF Doc. 14; Page ID# 876.  Long asserts Dr. Morgan did not provide details regarding the prescribed exercise and physical therapy, thus there is no basis for assuming that the prescribed exercise and physical therapy would require standing or walking.  Id.  Long also argues the ALJ failed to explain how Dr. Morgan's opinions were contrary to the record as a whole.  Id.

The commissioner counters that the ALJ took into account the factors needed for a correct treating physician analysis and substantial evidence supports the ALJ's decision to accord Dr. Morgan's opinion little weight.  ECF Doc. 15, Page ID# 901-02.  The commissioner contends the ALJ correctly found that Dr. Morgan's opinions limiting or precluding Long's ability to sit, stand, and walk were not supported by the evidence of record as a whole and "were directly contradicted by the treatment he recommended in the form of physical therapy and exercise, two activities that logically speaking, would have involved some form of sitting, standing, or walking at any given time (Tr. 21, 497)."  Id. at 903.  The commissioner also argues

that state reviewing physician Dr. Gilford's opinion supports the ALJ's decision to accord Dr. Morgan's opinion little weight.  Id. at 903-04.

Evidence from doctors who treat Social Security applicants must be weighed using specific requirements created by the federal government.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  The ALJ must examine what work the treating source performed.  *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013).  The treating physician rule requires that "[a]n ALJ [] give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

If an ALJ does not give the treating source opinion controlling weight, the ALJ must use several factors to determine the weight to give the opinion, including: the length, frequency, nature, and extent of the treatment relationship; supportability; consistency; specialization; and other factors which support or contradict the opinion.  20 C.F.R. § 416.927(c).  The ALJ is not required to explain how he considered each of these factors but must provide "good reasons" for discounting a treating physician's opinion.  20 C.F.R. § 416.927(c)(2); *see also Cole*, 661 F.3d at 938 ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned.").  The ALJ's "good reasons" must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).  As the Sixth

Circuit has noted,

> The conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

Id. at 377. Because the reason-giving requirement exists to "ensur[e] that each denied claimant receives fair process," the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." Id. (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir.2007) (emphasis added)). However, the ALJ is not obligated to provide an "exhaustive factor-by-factor analysis." *See Francis v. Comm'r of Soc. Sec.* 414 F. App'x. 802, 804 (6th Cir. 2011).

Here, the ALJ provided good reasons for assigning little weight to Dr. Morgan's assessment. Substantial evidence supports the ALJ's finding that Dr. Morgan's restrictions in his assessment of never standing or walking and only occasionally sitting are contrary to the record as a whole and with Dr. Morgan's prescribed treatment of exercise and physical therapy. For example, the ALJ noted Dr. Solomon evaluated Long on April 15, 2011 and found her muscle strength and tone were normal and her gait was without abnormality. (Tr. 18, 488) X-rays of Long's right hip and right femur taken on June 2, 2011 were normal. (Tr. 19, 539) Examining psychologist Dr. Kirkland noted that Long took a bus to her evaluation and walked approximately a half-mile to his office from the bus stop. (Tr. 20, 539) It cannot both be true that Long could "never" walk but also was capable of walking half a mile.

The opinions of the state reviewing physician, Dr. Gilford, and examining physician Dr.

Stone supported the ALJ's decision to give little weight to Dr. Morgan's assessment. Dr. Gilford determined from a review of the medical records that Long could stand, sit, or walk with normal breaks for a total of six hours in an eight-hour workday. (Tr. 140) The ALJ gave Dr. Gilford's assessment substantial weight because it was consistent with the medical record and Dr. Stone's examination of Long. (Tr. 20) Agency regulations recognize that state agency reviewing sources, like Dr. Gilford, are highly skilled medical professionals who are experts in social security issues. *See* 20 C.F.R. § 416.927.

Examining physician Dr. Stone also found Long had the ability to sit, stand, and/or walk. She determined Long could sit for two hours, stand for twenty minutes, and walk for twenty minutes at one time without interruption and could sit, stand, or walk for a total of five hours in an eight-hour work day. (Tr. 556) She also found Long could occasionally climb stairs and ramps, travel alone, ambulate without assistance, and climb a few steps at a reasonable pace with a single hand rail (Tr. 559).

The ALJ's explanation demonstrates that she properly considered the regulatory factors and discounted Dr. Morgan's opinions because of the inconsistency of those opinions with the record as a whole and with Dr. Morgan's prescribed treatments of exercise and physical therapy. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ therefore provided good reasons for assigning less than controlling weight to Dr. Morgan's assessment, and she fulfilled her obligation to provide good reasons for the weight assigned, as required by the regulations. *See, e.g. Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). Thus, under the applicable standard of review I find no error in ALJ's evaluation of treating physician Dr. Morgan's opinion.

### C. The ALJ's Opinion Complied with SSR 96-8p

Long argues the ALJ's RFC determination did not comply with the requirements of SSR 96-8p, because it did not include any specific assessment of Long's ability to sit, stand, walk, lift,

or carry.  ECF Doc. 14, Page ID# 876.  Long contends this failure is reversible error.  Id. at 875.

The ALJ summarized her RFC determination as follows:

> After careful consideration of the entire record, the undersigned finds that since June 21, 2011, the claimant has the residual function capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 415.967(b) with the following exceptions and considerations: use of a cane to talk to and from the work site; occasionally operate hand controls and reach overhead; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and never climb ladders or scaffolds; occasionally be exposed to humidity and wetness, and extremes of temperature; never be exposed to unprotected heights, moving mechanical parts, or operation of a motor vehicle; no exposure to uneven terrain or wet, slippery surfaces.  Additionally, she is limited to simple tasks; occasional interaction with coworkers and the public; and changes in the work environment or expectations should be infrequent and introduced gradually.  The claimant would need the use of a cane for walking to and from the worksite.

(Tr. 16-17)

SSR 96-8p requires that a RFC assessment address the exertional capacity of the individual, including the individual's "ability to perform each of the seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling."  *See* SSR 96-8p, 1996 WL 374184, at *5.  "The Commissioner's regulations specify that a claimant's RFC must take into account the extent to which a claimant's 'ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reach, handling, stooping or crouching) . . .' may reduce the claimant's ability to work."  *Heldman v. Comm'r of Soc. Sec.*, No. 2:15-CV-540, 2015 WL 7888792, at *4 (S.D. Ohio Dec. 4, 2015), *adopted by*, No. 2:15-CV-540, 2016 WL 2903279 (S.D. Ohio May 18, 2016) (quoting 20 C.F.R. § 416.945(b)).

Although "SSR 96-8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged."  *Delgado v. Commissioner of Social Sec.*, 30 F. App'x. 542, 547 (6th Cir. Mar. 4, 2002).  "[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and

explain the resolution of any inconsistencies in the record." Id. at 548 (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153, No. 00–1995 (3rd Cir. Dec. 19, 2000)).

I find that the ALJ's RFC assessment complied with SSR 96–8p. The ALJ gave a thorough explanation of the medical evidence, citing to several examinations by plaintiff's physicians since the alleged onset date of June 21, 2011 and to the medical assessments of the state agency and treating physicians. (Tr. 17-21) The ALJ determined that Long had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 16-17) Sections 404.1567(b) and 416.967(b) of the Code of Federal Regulations describe light work as involving:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b). The ALJ's RFC finding was consistent with both Dr. Stone's and Dr. Gilford's medical assessments. (Tr. 140, 554-556)

Dr. Stone determined Long could frequently lift or carry up to 10 lbs., occasionally lift or carry 11 to 20 lbs., and never lift or carry over 21 lbs. (Tr. 21, 554) Dr. Stone found Long could occasionally push or pull. (Tr. 21, 556) Dr. Stone opined that Long could sit for two hours, stand for twenty minutes, and walk for twenty minutes at one time without interruption. (Id.) Dr. Stone also determined Long could sit, stand, and walk for a total of five hours in an eight-hour work day. (Id.)

Dr. Gilford determined Long could: occasionally lift and/or carry 20 lbs.; frequently lift and/or carry 10 lbs.; and stand, sit, or walk with normal breaks for a total of six hours in an eight-hour workday. (Tr. 140) He also determined Long's ability to push or pull were limited only by her ability to lift and carry. (Id.) The ALJ gave Dr. Gilford's assessment substantial weight because it was consistent with the evidence of record and Dr. Stone's examination. (Tr. 20)

Dr. Morgan determined Long could occasionally sit, but never stand or walk. (Tr. 21, 497-498) He also determined Long could occasionally lift or carry up to 10 lbs., but never lift or carry more than 11 lbs. or push or pull with either hand. (Tr. 497)

As discussed above, substantial evidence supports the ALJ's decision to give Dr. Morgan's assessment little weight, because his assessment that Long could never stand or walk, and only occasionally sit were contrary to his prescribed exercise and physical therapy treatments and the medical record (such as the evidence that Long could walk a half a mile).

Here, and as discussed above, the ALJ considered the medical and other evidence on the disputed issues and explained the basis for her determination of Long's RFC. Although SSR 96–8p requires that an ALJ evaluate a claimant's RFC "function-by-function," it does not require that an ALJ discuss this function-by-function evaluation in writing. *See Nelson v. Comm'r of Soc. Sec. Admin.*, No. 5:16CV2464, 2017 WL 4404448, at *11 (N.D. Ohio July 19, 2017), *adopted by*, No. 5:16CV2464, 2017 WL 4402521 (N.D. Ohio Oct. 2, 2017) (citing *Delgado v. Comm'r of Soc. Sec.*, 30 F. Appx. 542, 547 (6th Cir. 2002) ("'Although SSR 96–8p requires a "function-by-function evaluation" to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged,' collecting cases")). Accordingly, I find that Long's argument lacks merit and the ALJ's RFC determination satisfied the requirements of SSR 96-8p.

### D. The ALJ Did Not Err in Including the Limitation that Long Would Only Use a Cane When Walking to and From the Worksite

Long also argues that the ALJ erred by including the limitation in the RFC that Long only would need to use a cane for walking to and from a worksite. *See* ECF Doc. 14, Page ID# 877. Long contends this limitation is not relevant to Long's ability to perform work activity and "Dr. Stone did not in any way indicate that the need for the use of a cane to ambulate was limited to for [*sic*] walking to and from the work site." *See Id*.

The commissioner counters that Long's argument must be rejected because the ALJ's RFC is consistent with Dr. Stone's examination notes and reviewing physician Dr. Gilford's opinion.  ECF Doc. 15, Page ID# 905.

Dr. Stone noted that Long "uses a cane for pain outdoors and it was prescribed by a doctor and is medically necessary."  (Tr. 551)  Dr. Stone further noted Long was able to change for the exam without assistance, get on and off the exam table, and rise from a chair without difficulty.  (Tr. 19, 551)  Dr. Stone found Long's stance was normal and her gait was antalgic and favored her right lower extremity.  (Tr. 551)  Long could not walk on heels and toes or squat and she exhibited negative straight leg raise in the seated position, but positive in the supine position.  (Tr. 551-52)  Long had full range of motion in her hips, knees, and ankles, but Dr. Stone noted tenderness in Long's feet, knees, thoracic and lower lumbosacral spine and paraspinals, supraspinatus muscles, and lateral aspects of the hips, SI joints, sciatic notches, and hands.  (Id.)

Dr. Stone's medical source statement opined that Long could walk for thirty minutes at one time without interruption and walk for a total of five hours in an eight hour workday.  (Tr. 555)  She stated that Long used a cane during the entire examination and the cane was medically necessary.  (Id.)  She opined that Long could occasionally climb stairs and ramps, but never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl.  (Tr. 557)  Dr. Stone also opined Long could not shop, walk on rough or uneven surfaces, or use standard public transportation, but could travel alone, ambulate without using a wheelchair or two canes, climb a few steps using a hand rail, prepare a meal and feed herself, and take care of her personal hygiene.  (Tr. 559)

The ALJ only gave partial weight to Dr. Stone's assessment.  (Tr. 21)  As set forth above, opinions from a claimant's treating physician are entitled to controlling weight so long as the

opinions are well supported by acceptable medical evidence and not inconsistent with the other substantial evidence of record. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Further, if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as [she] sets forth a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Here, Dr. Stone was not a treating physician and her opinions were entitled to less deference. *See, e.g., Oliver v. Comm'r of Soc. Sec.*, 415 F. Appx. 681, 684 (6th Cir.2011) (noting that the brief nature of the relationship militates in favor of granting the examining source opinion limited weight); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 452 (6th Cir.1986) (ALJ may reject opinion of one-time examining psychologist). Thus, the ALJ did not err by assigning partial weight to Dr. Stone's opinion and discounting those limitations she found unsupported by objective medical evidence.

The ALJ assigned partial weight to Dr. Stone's assessment, because it was more restrictive regarding Long's postural capabilities than the findings evidenced in Dr. Stone's examination. (Tr. 21) In contrast, the ALJ gave substantial weight to reviewing physician Dr. Gilford's assessment (Tr. 20), in which he assessed that Long was capable of: standing and/or walking with normal breaks for a total of six hours in an eight-hour workday; occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; but never climbing ladders, ropes, or scaffolds. (Tr. 141) Dr. Gilford also found that Long should avoid unprotected heights, hazardous machinery, uneven terrain, hazardous situations, and wet, slippery, or icy surfaces. (Tr. 142) The ALJ stated Dr. Gilford's assessment "is consistent with the records of evidence and seems more consistent with Dr. Stone's examination than does Dr. Stone's assessment." (Tr. 20)

Long's argument lacks merit.  The ALJ's inclusion of the limitation in the RFC that Long would only need to use a cane for walking to and from the worksite is supported by substantial evidence, including Dr. Stone's medical examination notes.  Thus, under the applicable standard of review I find no error in the ALJ's inclusion of the limitation at issue in her RFC determination.

## VII.    CONCLUSION

Because (i) the ALJ properly applied the treating source rule, (ii) the RFC assessment complied with SSR 96-8p, and (iii) because substantial evidence supported the limitations regarding Long's use of a cane for walking to and from a worksite, I find that Long has not demonstrated a basis upon which to reverse or remand the commissioner's decision.  Because the commissioner's decision was supported by substantial evidence it must be, and hereby is, AFFIRMED.

IT IS SO ORDERED.


Dated: January 16, 2018

Thomas M. Parker
United States Magistrate Judge